[No. B085264 Second Dist., Div. Seven. Aug. 14, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD LEE IRIZARRY, Defendant and Appellant.

COUNSEL

Mark R. Harvey, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General,

William T. Harter and Thomas W. Casparian, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

JOHNSON, J.—Richard Lee Irizarry appeals from the judgment entered following a jury trial resulting in his conviction for first degree burglary, with court findings he had two prior felony convictions for which he had served separate prison terms. (Pen. Code, §§ 459, 667.5, subd. (b).)

Appellant contends: I. "The trial court erred in refusing appellant's request for instruction on unauthorized entry of property as a lesser related offense." II. "Appellant's presence at the readback of testimony could not be waived by counsel" and "[t]he failure to obtain [a] waiver of [appellant's] presence was not harmless beyond a reasonable doubt."

### FACTS AND PROCEEDINGS BELOW

*Prosecution Evidence*

Viewing the evidence in accordance with the usual rules on appeal (*People* v. *Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]), in January of 1994, Charles Mannak lived at 43931 Delgado Court in Lancaster. His residence had an attached garage. During the evening of January 12, 1994, Mannak closed the garage door from the inside with his automatic garage door opener and entered his residence through the door leading from the garage's interior into the residence. The large garage door could not be opened from the outside under ordinary circumstances after it was closed from the inside.

About 2:30 a.m. the next morning, on January 13, 1994, Joseph Daniels, Mannak's neighbor, was walking to his car, which was parked in his driveway. Daniels saw appellant across the street, walking out of Mannak's open garage door with fishing tackle. Appellant put the tackle on the grassy area between Mannak's and the next-door neighbor's residence, in an area toward the back of the lot near the backyard fencing. Appellant "tiptoed" or walked softly back into the garage. Then, appellant emerged once more from the open garage door with two more fishing rods. Daniels yelled out to appellant and walked across the street. Appellant spoke briefly to Daniels.

Daniels rang Mannak's front doorbell. Mannak came outside and saw his fishing poles and tackle box sitting on the grass between the houses. Mannak had not given appellant permission to open the garage or remove its contents.

Mannak telephoned the police. Twenty minutes or so later, at 2:45 or 3 a.m., Los Angeles County Deputy Sheriff David Hopps arrived and arrested appellant. Mannak did not have much valuable property in the garage besides his fishing tackle. But, in addition to the tackle, Mannak did have a bicycle and some tools in the garage.

On the way to the sheriff's station after the arrest, appellant asked Hopps to take him by a nearby trailer park at 28th Street East and Avenue I. Appellant wanted to tell his wife he was in custody and there was no telephone at the trailer. Hopps accommodated appellant's request. About 3:30 a.m., at the end of the street, about two doors away from Mannak's residence, Daniels saw a man putting a bicycle into a vehicle. The bicycle had been hidden in a ditch and under some bushes. The vehicle sped off with the bicycle before Daniels could get its license number.

*Defense*

In defense, appellant testified he was at Linda Clark's trailer that evening with his wife. He was ready to drive home to Littlerock, California, 50 miles or so away, when a guy named Rob drove up in a truck. Appellant had met Rob three weeks previously and did not know Rob's last name. Rob suggested they go fishing that night in Littlerock. Appellant explained he had no fishing tackle. Rob explained he would get tackle for them and drove appellant to a local liquor store where Rob made several telephone calls. Rob then announced he had found someone to loan them tackle. Rob drove appellant to Mannak's house, where the garage door was open when they arrived, as Rob had previously explained it would be. Rob dropped appellant off at the corner two doors down from Mannak's residence and told appellant to get four fishing rods and the tackle box and close the garage when he was finished. Rob said he was going to the market to get some things and he would return to pick up appellant and the tackle. Appellant said after appellant removed the tackle from the garage, he reentered to pull the rope to manually close the garage door, as he had been instructed to do. Daniels confronted him and rang Mannak's doorbell. Mannak telephoned the police and appellant waited there until the police arrived. Appellant was arrested.

During appellant's testimony, defense counsel elicited from appellant he had four prior felony convictions for grand theft, receiving stolen property, burglary and attempted grand theft.[1]

### Request for Instruction

After the People and defense had rested, defense counsel asked the court to instruct the jury with CALJIC No. 16.350, concerning the unauthorized entry of property, or as the offense is commonly called, trespass (Pen. Code, § 602.5).[2] Defense counsel argued: "If the jurors believe that in fact the fishing equipment was merely going to be used and not permanently, then I think we have a trespassing established by the evidence. And [appellant's] testimony was such that there was no intent to take or keep or steal the equipment, so that would leave the jurors an option of perhaps feeling [appellant] might not be guilty of any theft-related offense, but nevertheless perhaps he should have been a little more circumspect and mature in his reflections and not have entered upon the property of Mr. Mannak and, therefore, would properly be found guilty of trespass."

The prosecutor urged: "If the jury were to find [appellant] does not have the intent to steal, the jury should acquit him. [If appellant's] version of the events [were true], in my opinion, he [would not be] legally guilty of a trespass, because he would, however mistaken, have believed that he had permission to be on the property. He was—he would be lacking in any criminal intent in that regard. If the jury finds that he had no intent, he is not guilty. Therefore, that process or rather provision for that is already provided for in the not guilty verdict."

The court refused the instruction, commenting it agreed Penal Code section 602.5 was not a necessarily related offense, and if the jury found

---

[1]Defense counsel elicited this evidence defensively. In a motion *in limine* prior to the commencement of the testimony, the People indicated they would impeach appellant with four prior theft-related felony convictions if appellant chose to testify. Defense counsel asked the court to exercise its discretion to "sanitize" the prior convictions by ordering the People not to refer to the nature of these convictions during impeachment, except to indicate they were "theft-related." The court refused the request.

[2]CALJIC No. 16.350, provides as follows: "Every person who enters any noncommercial dwelling house, apartment, or similar place without the consent of the owner, or who enters with such consent but remains in any such property without the consent of the owner is guilty of a misdemeanor."

Penal Code section 602.5, prohibiting the unauthorized entry of property, provides: "Every person other than a public officer or employee acting within the course and scope of his employment in performance of a duty imposed by law, who enters or remains in any noncommercial dwelling house, apartment, or other such place without consent of the owner, his agent, or the person in lawful possession thereof, is guilty of a misdemeanor."

appellant did not have the requisite specific intent, the jury would be required to acquit him.

## Final Argument

During counsel's final comments to the jury, both parties urged the only issue in the case was appellant's intent in entering the garage and the case, reduced to its essence, involved the issue of whether or not the jury believed appellant was duped that night into entering the garage. Defense counsel urged at one point: ". . . [M]aybe Rob . . . was cruising around, had noticed that perhaps this garage door was open and noticed there was some equipment in there and figured it might be an easy mark and we'll have somebody else go out and take it, and you get it, fine, if not, no big deal. It's not sweat off his back [if appellant got caught]."

## DISCUSSION

### I. *Lesser Related Jury Instructions*

■ The contention the court committed reversible error by refusing to instruct the jury as to unauthorized entry (Pen. Code, § 602.5) as a lesser related offense to burglary lacks merit.[3]

■ In *People* v. *Wickersham* (1982) 32 Cal.3d 307 [185 Cal.Rptr. 436, 650 P.2d 311], the Supreme Court said: " ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." . . . That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present, but not when there is no evidence that the offense was less than that charged.' " (*Id.* at pp. 323-324, citations omitted.)

■ We observe trespass is not a lesser included offense to burglary. (*People* v. *Wetmore* (1978) 22 Cal.3d 318, 327, fn. 8 [149 Cal.Rptr. 265, 583 P.2d 1308].)

---

[3]We use the true name of the offense codified in Penal Code section 602.5, "unauthorized entry," and the term "trespass" interchangeably in this opinion.

In *People* v. *Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055], however, the California Supreme Court held due process requires a criminal defendant be allowed to request jury instructions on a lesser offense which is closely related to the charged offense where there is substantial evidence of its commission. In *Geiger*, the defendant's second degree burglary conviction was reversed upon the defendant's claim that in accordance with his theory of the case he could have been convicted of vandalism, a related, but not necessarily included offense in the burglary. The Supreme Court stated: "[W]e find no reason in law, justice, or common sense why a jury that is not persuaded of the defendant's guilt of the charged offense should not have the opportunity to find him guilty of a lesser related offense where, as here, the lesser offense is closely related to that charged, there is evidence of its commission, and defendant's theory of defense is consistent with such a finding." (*Id.* at p. 514.) The court set forth three prerequisites to instructions on related, but not necessarily included, offenses. First, there must be "some basis, other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged." (*Id.* at p. 531.) Second, "the offense must be one closely related to that charged and shown by the evidence." (*Id.* at pp. 530-531.) Third, "the instructions must be justified by the defendant's reliance on a theory of defense that would be consistent with a conviction for the related offense. Thus, the instruction need not be given if the defense theory and evidence reflect a complete denial of culpability as when the defense is alibi, or the only issue is identity, unless the defendant argues that the evidence at most shows guilt only of the related offense." (*Id.* at pp. 531-532.)

The state of the evidence at the trial was as follows. The prosecution presented evidence that appellant, at 2:30 a.m., forcibly entered the closed and attached garage of the residence in which Mannak resided and removed Mannak's fishing tackle by stealth from the garage. Appellant was discovered removing the tackle from the garage by a neighbor. Appellant may have arrived by bicycle, since, soon after appellant's arrest, another man came by and removed a bicycle from some bushes in a ditch nearby. Mannak testified appellant did not have Mannak's consent to enter Mannak's garage. In defense, appellant claimed a man named Rob led him to believe Rob made arrangements with the resident to borrow the tackle. Appellant was to get the tackle from the friend's garage, which was left open for them, and appellant was to close the garage when he had secured the tackle. Rob was to return to pick him up after going to the market.

The decision in *People* v. *Farrow* (1993) 13 Cal.App.4th 1606, 1626 [16 Cal.Rptr.2d 844], found trespass can be a lesser related offense to burglary.

Nevertheless, under the circumstances presented in appellant's case, the theory of defense was inconsistent with the giving of the trespass instruction. We explain.

■ Penal Code section 20 provides: "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." (See *People* v. *Mayberry* (1975) 15 Cal.3d 143, 154 [125 Cal.Rptr. 745, 542 P.2d 1337] [rape and kidnapping]; *People* v. *Hernandez* (1964) 61 Cal.2d 529, 535 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092] [statutory rape]; *People* v. *Stuart* (1956) 47 Cal.2d 167, 171 [302 P.2d 5, 55 A.L.R.2d 705] [manslaughter based on a theory the defendant committed the unlawful act of filling a prescription, a strict liability offense; *People* v. *Vogel* (1956) 46 Cal.2d 798, 801 [299 P.2d 850] [bigamy]; *People* v. *Devine* (1892) 95 Cal. 227, 229-231 [30 P. 378] [larceny].) "So basic is this requirement that it is an invariable element of every crime unless excluded expressly or by necessary implication." (*People* v. *Vogel, supra*, 46 Cal.2d at p. 801.) **(1c)** Based on the *Vogel* rule, scienter is a necessary element of the offense of trespass and the defense of a reasonable and bona fide mistake of fact was available to appellant for *both* the trespass and burglary offenses. (Cf. *People* v. *Mayberry, supra*, 15 Cal.3d at pp. 153-158; *People* v. *Hernandez, supra*, 61 Cal.2d at pp. 535-536; *People* v. *Stuart, supra*, 47 Cal.2d at pp. 173-176; *People* v. *Vogel, supra*, at pp. 801-805.). Since the mistake-of-fact defense negated the requisite intent for both offenses, if a jury determined appellant was innocent of the burglary, a jury also would have acquitted him of the trespass offense. Here appellant did not dispute he both entered the garage and took the fishing gear from that garage. He only argued he mistakenly thought he had permission for both the entry and the taking. Thus, under the peculiar circumstances of this case, it would have been impossible for the jury logically to have found appellant innocent of theft and yet guilty of trespass. Accordingly, a lesser related offense instruction was without justification and the court properly determined the lesser related instruction as to trespass was not required. (*People* v. *Geiger, supra*, 35 Cal.3d at pp. 531-532.)

## II. *Reading Testimony to the Jury During Deliberations*

The contention trial counsel could not waive appellant's presence for him during the reading of trial testimony similarly lacks merit.

During deliberations, the jury requested to have appellant's testimony on direction and cross-examination read to them. Defense counsel waived appellant's presence during the rereading of the testimony.

██ It is settled trial counsel may consent to the reading of testimony to the jury outside of the defendant's presence and without his express consent. (*People* v. *Lang* (1989) 49 Cal.3d 991, 1028 [264 Cal.Rptr. 386, 782 P.2d 627]; *People* v. *Bloyd* (1987) 43 Cal.3d 333, 360-361 [233 Cal.Rptr. 368, 729 P.2d 802].) Furthermore, "[I]t is inconceivable that [appellant] would not have jumped at a chance to have his version of the events presented once more to the jury." (*People* v. *Bloyd, supra,* 43 Cal.3d at pp. 360-361)

### DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Woods (Fred), J., concurred.

Appellant's petition for review by the Supreme Court was denied November 15, 1995.